1  CHRISTINE M. PAJAK (State Bar No. 217173), and
   GABRIEL I. GLAZER (State Bar No. 246384), Members of
2  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
3  1901 Avenue of the Stars, 12th Floor
   Los Angeles, California 90067
4  Telephone: (310) 228-5600
   Facsimile: (310) 228-5788
5  E-Mail: cpajak@stutman.com, gglazer@stutman.com

6  Counsel for the OWNIT Liquidating Trust

7              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
8               SAN FERNANDO VALLEY DIVISION

9  In re                     )  Case No. 1:06-12579 VK
                             )
10                           )  Chapter 11
                             )
11 OWNIT MORTGAGE            )  NOTICE OF MOTION AND MOTION FOR AN ORDER:
   SOLUTIONS, INC.,          )
12                           )  (I) APPROVING THE FINAL REPORT OF THE OWNIT
                Debtor.      )  LIQUIDATING TRUST,
13                           )
                             )  (II) APPROVING THE FINAL DISTRIBUTION OF FUNDS
14                           )  AND DISSOLVING THE OWNIT LIQUIDATING TRUST,
                             )
15                           )  (III) APPROVING THE DESTRUCTION OF DOCUMENTS
                             )
16                           )  (IV) DISCHARGING THE OWNIT LIQUIDATING
                             )  TRUSTEE AND HIS PROFESSIONALS FROM LIABILITY
17                           )  AND ANY FURTHER DUTIES OR OBLIGATIONS;
                             )
18                           )  (V) FINDING THAT THE LIQUIDATING TRUST HAS
                             )  BEEN FULLY ADMINISTERED AND SHALL HAVE NO
19                           )  FURTHER LIABILITY TO ANY PARTY OTHER THAN T(
                             )  THOSE PROFESSIONALS WHO ARE PROVIDING
20                           )  SERVICES TO THE TRUST IN ORDER TO CLOSE THE
                             )  CASE AND TO FILE FINAL TAX RETURNS; AND
21                           )
                             )  (VI) ENTERING A FINAL DECREE; AND DECLARATION
22                           )  OF M. FREDDIE REISS IN SUPPORT THEREOF
                             )
23                           )       **Hearing Date**
                             )  Date:      December 6, 2012
24                           )  Time:      2:30 p.m.
                             )  Location:  Courtroom 301
25                           )             21041 Burbank Blvd.
                             )             Woodland Hills, CA 91367
26                           )
                             )
27 ——————————————————————)

28

567723v.3

1  **TO THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY
2  JUDGE; THE UNITED STATES TRUSTEE; AND PARTIES REQUESTING POST
   CONFIRMATION NOTICE:**

3       **PLEASE TAKE NOTICE** that on December 6, 2012 at 2:30 p.m. before the

4  Honorable Victoria Kaufman, United States Bankruptcy Judge, in Courtroom 301 located at 21041

5  Burbank Boulevard, Woodland Hills, California, the Ownit Liquidating Trust (the "Liquidating

6  Trust") established pursuant to the terms of the "Debtor's Third Amended Plan of Reorganization

7  Under Chapter 11 of the Bankruptcy Code" (the "Plan"; terms defined in the Plan are used herein as

8  therein defined), filed by Ownit Mortgage Solutions, Inc. (the "Debtor"), and the Court order

9  confirming such Plan (the "Confirmation Order"), will move and does hereby move for an order:

10 (i) approving the final report of the Liquidating Trust, (ii) dissolving the Liquidating Trust,

11 (iii) approving the destruction of stored documents, (iv) discharging the firm of FTI Consulting and

12 M. Freddie Reiss (the "Liquidating Trustee") and his professionals from any and all liability and

13 further duties and obligations for acting as, and on behalf of, the Liquidating Trustee under the Plan

14 and the Ownit Liquidating Trust Agreement (the "Trust Agreement"), (v) finding that the

15 Liquidating Trust has been fully administered and shall have no further liability to any party other

16 than to those professionals who are providing services to the Trust in order to close the case and to

17 file final tax returns, and (vi) entering a final decree in this case.

18      **PLEASE TAKE FURTHER NOTICE** that this Motion is based on Bankruptcy

19 Code sections 350 and 1142, the Plan, the Confirmation Order, the Trust Agreement, the attached

20 Memorandum of Points and Authorities, the annexed Declaration of M. Freddie Reiss filed in

21 support of the Motion (the "Reiss Declaration"), and the record in this case.

22      **PLEASE TAKE FURTHER NOTICE** that this Court has jurisdiction to consider

23 this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding is proper in this

24 district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to

25 28 U.S.C. § 157(b)(2)(A).

26      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule

27 9013-1(f), any response or opposition to this Objection must be in writing, must be accompanied by

28

1   supporting evidence, must otherwise comply with Local Bankruptcy Rule 9013-1, and must be filed

2   with the Court and served upon the undersigned counsel at least fourteen (14) days prior to the

3   hearing on the Motion.  Failure to file and serve a timely response may be deemed to constitute

4   consent to the Motion and the relief requested herein under Local Bankruptcy Rule 9013-1(h).

5         **WHEREFORE**, the Liquidating Trust respectfully requests that the Court enter an

6   order: (i) approving the final report of the Liquidating Trust, (ii) approving the final distribution of

7   funds and dissolving the Liquidating Trust, (iii) approving the destruction of stored documents, (iv)

8   discharging the firm of FTI Consulting and M. Freddie Reiss and his professionals from any and all

9   liability and further duties and obligations for acting as, and on behalf of, the Liquidating Trustee

10   under the Plan and the Trust Agreement, (v) finding that the Liquidating Trust has been fully

11   administered and shall have no further liability to any party other than to those professionals who are

12   providing services to the Trust in order to close the case and to file final tax returns, (vi) entering a

13   final decree in this case, and (vii) granting such other relief as may be just and appropriate.

14

15   DATED: November 15, 2012        /s/ Gabriel I. Glazer

16                             Gabriel I. Glazer, a Member of
STUTMAN, TREISTER & GLATT

17                             PROFESSIONAL CORPORATION
Counsel for the Ownit Liquidating Trust

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page(s)**

3    I.    STATEMENT OF FACTS .................................................................................................. 4

4        A.    General Background on the Debtor.......................................................................... 4

5        B.    General Background on the Liquidating Trust.......................................................... 4

6        C.    Significant Events Following the Petition Date. ..................................................... 5

7            1.    Assets and Recoveries................................................................................. 5

8            2.    Claims Resolution. ...................................................................................... 6

9                a.    Repurchase Claims.......................................................................... 6

10               b.    The WARN Action. ......................................................................... 6

11               c.    Adversary Proceedings..................................................................... 7

12           3.    Distributions to Unsecured Creditors........................................................... 7

13       D.    Administration of the Ownit Liquidating Trust. ..................................................... 8

14       E.    The Ownit Trust Committee.................................................................................... 9

15   II.   ARGUMENT ................................................................................................................... 9

16       A.    Approval of the Final Report of the Ownit Liquidating Trust. ............................... 10

17       B.    Remaining Issues Prior To The Entry Of A Final Decree. ..................................... 11

18       C.    Destruction of Documents..................................................................................... 13

19       D.    Dissolution of the Ownit Liquidating Trust. .......................................................... 13

20       E.    Discharge of Liability............................................................................................ 14

21       F.    Final Decree. ......................................................................................................... 15

22   III.  CONCLUSION.............................................................................................................. 16

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**CASES**

*U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.),*
301 F.3d 296 (5th Cir. 2002) ..................................................................................10

**STATUTES**

11 U.S.C. § 350.....................................................................................................2, 16

11 U.S.C. § 1142..................................................................................................2, 10

11 U.S.C. § 3022.....................................................................................................16

28 U.S.C. § 157.........................................................................................................2

28 U.S.C. § 1334.......................................................................................................2

28 U.S.C. § 1408.......................................................................................................2

28 U.S.C. § 1409.......................................................................................................2

**RULES**

Local Bankruptcy Rule 9013-1 ..................................................................................3

Local Bankruptcy Rule 9013-1(f) ..............................................................................2

Local Bankruptcy Rule 9013-1(h) .............................................................................3

**OTHER AUTHORITIES**

15 COLLIER ON BANKRUPTCY (15th ed. rev.) ¶ 1142.03[1]..........................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**A.    General Background on the Debtor.**

Prior to filing its voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 28, 2006 (the "Petition Date"), the Debtor operated as a wholesale residential mortgage lender specializing in "subprime" loans. The Debtor originated approximately $8.3 billion in loans in 2005. As part of its business and operations, the Debtor borrowed funds from Merrill Lynch and JPMorgan Chase in order to originate loans and then sold substantially all of those loans to third-party purchasers (collectively, "Loan Purchasers"), most of which would bundle the purchased loans and issue securities backed by those loans and mortgages, to private investors. In the event of loan defaults, delinquencies, and/or other conditions, Loan Purchasers generally had a contractual right to require the Debtor to repurchase the underlying loans ("Repurchase Claims").

The Debtor filed the above-captioned bankruptcy case (the "Case") as the result of a serious deterioration in the mortgage market, increased Repurchase Claims, and the termination of its lines of credit by both Merrill Lynch and JPMorgan Chase. Proofs of claim were filed against the Debtor asserting (i) approximately $2 million in administrative priority claims; (ii) approximately $20 million in other priority claims; (iii) approximately $635 million in secured claims; and (iv) over $2.3 billion in general unsecured claims.

**B.    General Background on the Liquidating Trust.**

On November 21, 2007, the Debtor filed its Plan, which proposed to transfer all of the Debtor's assets, including all causes of action and the right to object to, and settle, claims to the Liquidating Trust. On January 17, 2008, the Court entered the Confirmation Order [Docket No. 1467] confirming the Plan. On January 28, 2008, the effective date (the "Effective Date") under the Plan occurred and, on such date, the Liquidating Trust was established and all assets of the Debtor were transferred to the Liquidating Trust. M. Freddie Reiss was appointed as the Liquidating

1    Trustee pursuant to the Trust Agreement. The beneficiaries of the Liquidating Trust are the Debtor's

2    unsecured creditors.

3        **C.    Significant Events Following the Petition Date.**

4            **1.    Assets and Recoveries.**

5            Nearly all of the assets available for distribution to the Debtor's creditors have been

6    obtained postpetition through a combination of tax refunds, proceeds of Court-approved loan sales,

7    litigation and settlements with third parties. Specifically, during the Case, the Debtor applied for

8    and received federal tax refunds totaling approximately $25 million. Additionally, since the

9    Petition Date, the Debtor and the Liquidating Trust have, with Bankruptcy Court approval,

10   conducted multiple sales of approximately 140 mortgage loans in the aggregate, which sales

11   resulted in recoveries for the benefit of the estate totaling approximately $9.5 million. The most

12   recent of these sales was granted by an order of the Court entered on December 21, 2010 [Docket

13   No. 4695].

14           The Liquidating Trust has also recovered approximately $9 million by pursuing

15   claims against third parties. For example, pursuant to an order entered on August 3, 2009, [Docket

16   No. 4321], the Bankruptcy Court approved a global settlement agreement between the Liquidating

17   Trust and various Merrill Lynch entities that resulted in the Liquidating Trust's receipt of, *inter*

18   *alia*, over $5.7 million in cash and certain mortgage loans eventually liquidated by the Liquidating

19   Trust for more than $1.5 million. Pursuant to the settlement agreement, the Merrill Lynch entities

20   also waived an alleged secured claim in the approximate amount of $626 million, as well as

21   unsecured claims totaling more than $32.7 million.

22           Furthermore, the Liquidating Trust has obtained recoveries, and a reduction or

23   elimination of claims, from a number of the Debtor's former executives. For instance, on March

24   31, 2010, the Court approved a settlement agreement between the Liquidating Trust and William

25   Dallas, the Debtor's former Chief Executive Officer [Docket No. 4610] (the "Dallas Settlement").

26   Pursuant to the Dallas Settlement, Mr. Dallas made payments totaling over $1 million to the

27   Liquidating Trust. In addition to the Dallas Settlement, the Liquidating Trust has obtained $70,000

28

1  in affirmative recoveries from other of the Debtor's former executives.

2      **2.    Claims Resolution.**

3      Following its appointment, the Liquidating Trustee has worked to reconcile and

4  resolve the vast number of claims filed against the Debtor's estate.  At this time, the Liquidating

5  Trust believes it has paid or otherwise resolved all administrative and priority claims, including

6  approximately $3.7 million paid on account of approximately 775 claims filed by the Debtor's

7  former employees.  Further, as the result of settlements with Merrill Lynch, JPMorgan Chase, and

8  other third parties, the vast majority of all secured claims asserted against the Debtor were

9  withdrawn.

10      **a.    Repurchase Claims.**

11      Additionally, the Liquidating Trustee has given substantial attention to resolving the

12  Repurchase Claims, which collectively represent the vast majority in amount of all unsecured

13  claims.  In fact, Repurchase Claims represent approximately 98% of the total amount of all

14  unsecured claims asserted against the Debtor's estate.  The Liquidating Trust successfully

15  implemented a protocol designed to resolve the Repurchase Claims and the resolution of these

16  claims pursuant to this protocol has avoided the need for substantial litigation concerning the validity

17  and amount of those claims.  As a result of the implementation of the protocol, repurchase claims

18  filed in an aggregate amount of nearly $2.3 billion were reduced to allowed unsecured claims of

19  $118 million.  At this time, the Liquidating Trust believes it has entered into Court-approved

20  settlement stipulations resolving, or has otherwise resolved with Court approval, each of the

21  Repurchase Claims.

22      **b.    The WARN Action.**

23      On September 12, 2007, litigation was commenced against the Debtor by certain

24  former employees who alleged that, when the Debtor ceased operating and filed for bankruptcy

25  protection, it terminated the majority of its employees in violation of the Workers Adjustment and

26  Retraining Notification ("WARN") Act and its California state law equivalent (the "WARN

27  Action").  The plaintiffs sought damages in the approximate amount of $3.9 million on behalf of

28

1  most of the Debtor's former employees and asserted that the majority of all amounts owed were

2  entitled to priority under the Bankruptcy Code.  The Bankruptcy Court subsequently certified the

3  WARN Action as a class action lawsuit against the Debtor.  The Debtor and the Liquidating Trust

4  disputed the claims asserted in the WARN Action.  Following negotiations between the parties, the

5  Bankruptcy Court entered an order approving a settlement agreement between the Liquidating Trust

6  and the WARN Action plaintiffs, pursuant to which the Liquidating Trust paid approximately

7  $400,000 to settle and dismiss the WARN Action.

8                                c.       **Adversary Proceedings.**

9              As set forth on Schedule (vii) to the Final Report, the Liquidating Trust commenced a

10  number of adversary proceedings against various third parties during the Case and, in some cases,

11  such proceedings were commenced against the Liquidating Trust (collectively, the "Adversary

12  Proceedings").  The Liquidating Trust negotiated settlements in each of the Adversary Proceedings

13  that it commenced that resulted in (i) an affirmative recovery for the Liquidating Trust, and/or (ii) a

14  reduction or elimination of claims against the Debtor's estate.  All of the Adversary Proceedings

15  have been closed and no adversary proceeding involving the Liquidating Trust is pending at this

16  time.  *See* Final Report, Schedule (vii).

17                          3.       **Distributions to Unsecured Creditors.**

18              Over $2.3 billion in general unsecured claims were filed against the Debtor's estate.

19  Following the Liquidating Trust's negotiation of various settlements and objections to proofs of

20  claim filed in the Debtor's Case, general unsecured claims were reduced to allowed claims totaling

21  approximately $131 million.  In the summer of 2010, the Liquidating Trust made an initial

22  distribution of approximately $22.3 million, resulting in a return to unsecured creditors of

23  approximately 17% (the "Initial Distributions").[1]

24              After the Initial Distributions were made, the Liquidating Trust collected additional

25  amounts from third parties.  Among other things, the Liquidating Trust collected additional

26  payments under the Dallas Settlement and, in December 2010, the Court approved a sale of

27
28

---

[1]   Approximately $150,000 (0.68%) of this distribution was determined by the Liquidating Trust to be undeliverable, consistent with the terms of the Plan and the Trust Agreement.

1   mortgage loans formerly held by the Liquidating Trust which resulted in the Liquidating Trust

2   collecting approximately $1.1 million in sale proceeds (the "2010 Loan Sale").

3          In August 2012, the Liquidating Trust made a second distribution from its remaining

4   assets to its beneficiaries pursuant to the Plan and the Trust Agreement (the "Second Distribution").

5   The Second Distribution totaled approximately $2.154 million, resulting in an additional recovery of

6   1.65% to unsecured creditors.  In total, the Liquidating Trust distributed more than $29 million to

7   pre-petition creditors of the Debtor, including employees and unsecured creditors, and provided an

8   approximate 18.65% return to unsecured creditors.

9   **D.     Administration of the Ownit Liquidating Trust.**

10         Following the Effective Date, the Liquidating Trust took various steps, as necessary,

11  to administer its affairs and reduce its operating expenses.  Among other things, the Liquidating

12  Trust exited all of the Debtor's former office locations, minimized storage fees, and no longer

13  employs any of the Debtor's former employees.

14         As mentioned above, the Liquidating Trust also owned and liquidated a number of

15  mortgage loans following the Effective Date, including those that were the subject of the 2010 Loan

16  Sale (the "Loans").  During the period that the Loans were owned by the Liquidating Trust, they

17  were serviced by a Bank of America entity ("Servicer"), which, among other things, collected

18  payments on the Loans from the underlying borrowers and, where applicable, commenced

19  proceedings to foreclose on delinquent Loans.  Following the 2010 Loan Sale, the Liquidating Trust

20  engaged both the purchaser of the Loans and the Servicer in discussions concerning a final

21  reconciliation of amounts owed in connection with the Loans.  The Liquidating Trust does not

22  believe that these issues will impact the closing of the Case.

23         The Liquidating Trustee has now fully administered the Liquidating Trust and is

24  taking actions to wind-up the affairs of the Liquidating Trust, by, among other things, (i) making

25  final payments to the Liquidating Trust's professionals, (ii) preparing and filing final tax returns, and

26  (iii) distributing its remaining assets to beneficiaries in an efficient manner.  Moreover, the

27  Liquidating Trust has retained various documents and electronic records, which primarily relate to

28  the Debtor's former business operations and the administration of the Debtor's estate during this

1   Case.  Now that the Liquidating Trust has been fully administered, the Liquidating Trust seeks Court

2   authority to destroy such documents as described in further detail below.

3   **E.        The Ownit Trust Committee.**

4                    Pursuant to the Plan and the Trust Agreement, the Ownit Trust Committee was

5   formed to, *inter alia*, oversee the activities and performance of the Liquidating Trustee.  Pursuant to

6   section 6.1.2 of the Trust Agreement:

7                    [t]he OWNIT Trust Committee shall continue in effect until such time
                     as the discharge of all liabilities of the Liquidating Trustee, final
8                    Distribution of the entire OWNIT Trust Assets, entry of the order of
                     the Bankruptcy Court closing the Chapter 11 Case…, and the entry of
9                    the order of the Bankruptcy Court determining that the Liquidating
                     Trustee shall have no further duties or obligations under this
10                   Agreement.

11                   Upon the entry of an order approving this Motion, the Ownit Trust Committee will be

12   dissolved, consistent with the Trust Agreement.

13                                              **II.**

14                                          **ARGUMENT**

15                   Pursuant to Article VIII.P. of the Plan and Paragraph 32 of the Confirmation Order,

16   this Court retains "exclusive jurisdiction over any matter . . . arising in or related to the Case or the

17   Plan," including specific jurisdiction over matters including:

18              •   issuance of such orders in aid of execution of the Plan, to the
                    extent authorized by section 1142 of the Bankruptcy Code;
19

20              •   determination of any other matters that may arise in connection
                    with, or are related to, the Plan, the Disclosure Statement, the
21                  Confirmation Order, or any contract, instrument release, or
                    other agreement or document created in connection with the
22                  Plan or the Disclosure Statement, including, without limitation,
                    the OWNIT Liquidating Trust Agreement;

23              •   entry of a final decree closing the Case;

24              •   hearing and determining, to the fullest extent authorized by
                    applicable law, any issue or dispute directly or indirectly
25                  arising from or related to the OWNIT Liquidating Trust, the
                    OWNIT Trust Assets, the OWNIT Liquidating Trust
26                  Agreement, the composition of the OWNIT Liquidating Trust
                    Committee or the Liquidating Trustee; and

27

28

1            •    hearing and determining any other matter deemed relevant to
2                the consummation of the Plan and the administration of the
               Case.

3    *See* Plan, Article VIII.P.

4            Bankruptcy Code section 1142 provides:

5        (a)    Notwithstanding any otherwise applicable nonbankruptcy law,
               rule, or regulation relating to financial condition, the debtor
6                and any entity organized or to be organized for the purpose of
               carrying out the plan shall carry out the plan and shall comply
7                with any orders of the court.

8        (b)    The court may direct the debtor and any other necessary party
               to execute or deliver or to join in the execution or delivery of
9                any instrument required to effect a transfer of property dealt
               with by a confirmed plan, and to perform any other act,
10               including the satisfaction of any lien, that is necessary for the
               consummation of the plan.

11

12    11 U.S.C. § 1142; *see also U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.),*

13    301 F.3d 296, 305-06 (5th Cir. 2002) (Section 1142 "authorizes post-confirmation bankruptcy orders

14    necessary for the consummation of the plan. . . . [I]t empowers the bankruptcy court to enforce the

15    unperformed terms of a confirmed plan.") (quotations omitted); 15 COLLIER ON BANKRUPTCY (15th

16    ed. rev.) ¶ 1142.03[1] ("The scope of section 1142(b) is considerably broader than merely ministerial

17    acts, such as termination or creation of liens.  Acting pursuant to section 1142(b), the court may

18    issue any order necessary for the implementation of the plan.").

19            In fulfillment of its duties under the Trust Agreement and the Plan, the Liquidating

20    Trustee seeks Court approval of its final report and of various relief necessary to dissolve the

21    Liquidating Trust and to discharge the Liquidating Trustee in order to close this Case.

22    **A.**      **Approval of the Final Report of the Ownit Liquidating Trust.**

23            Section 4.9 of the Trust Agreement provides:

24            Prior to termination of the OWNIT Liquidating Trust, the Liquidating
           Trustee shall prepare a final report (the "Final Report"), which shall
25            contain the following information:  (i) all OWNIT Trust Assets
           including assets originally charged under the Liquidating Trustee's
26            control; (ii) all funds transferred into and out of, the Trust Reserves
           and Plan Reserves, if any; (iii) an accounting of all purchases, sales,
27            gains, losses, and income and expenses in connection with the OWNIT
           Trust Assets during the Liquidating Trustee's term of service
28            (including any predecessor Liquidating Trustee), (iv) a statement

setting forth each Beneficiary's share of items of income, gain, loss, deduction or credit and the Distributions to Beneficiaries; (v) the ending balance of all OWNIT Trust Assets; (vi) a narrative describing actions taken by the Liquidating Trustee in the performance of its duties which materially affect the OWNIT Liquidating Trust; and (vii) schedule(s) reflecting that:

(a)    all adversary proceedings and contested matters have been finally adjudicated by the entry of a Final Order;

(b)    all Claims for which the Plan provides for treatment as a distribution of an OWNIT Liquidating Trust Interest shall have either: (i) become Allowed Claims and the Holders thereof become Beneficiaries and received the treatment to be given such Allowed Claim pursuant to this Agreement and the Plan; or (ii) been disallowed by a Final Order or been deemed to be disallowed in accordance with the terms of the Plan;

(c)    all OWNIT Trust Assets (including Litigation Claims) have been either: (i) reduced to Cash; or (ii) abandoned by the Liquidating Trustee, in accordance with the provisions of this Agreement and the Plan; and

(d)    all expenses of the Liquidating Trust have been paid (or will be paid) and all payments and final Distributions to be made to Beneficiaries have been made (or will be made) by the Liquidating Trustee in accordance with the provisions of this Agreement and the Plan.

Trust Agreement, § 4.9.

The Liquidating Trust hereby seeks approval of its final report (the "Final Report"), which is attached as Exhibit "1" to the Reiss Declaration. All of the information required by section 4.9 of the Liquidating Trust Agreement, as quoted above, is included in this Motion and in the schedules attached to the Final Report.

**B.    Remaining Issues Prior To The Entry Of A Final Decree.**

On the Effective Date, cash in the approximate amount of $27.3 million was transferred to the Liquidating Trust. Following the Effective Date, the Liquidating Trust collected approximately $13.2 million in additional cash assets from multiple third parties, primarily through settlements and sales of mortgage loans. The Liquidating Trust made distributions to the Debtor's creditors totaling approximately $29.2 million in the aggregate, during the Case.[2]

---

[2]    As of October 30, 2012, approximately $90,000 of this amount had not yet been cashed.

1    As of October 31, 2012, the Liquidating Trust's remaining assets consist of cash

2 totaling approximately $267,000.[3]  These remaining funds will be used, in part, to make the

3 following payments: (i) fees incurred by the Liquidating Trustee and his professionals, (ii) UST fees,

4 and (iii) reserves to pay certain state taxes.  Prior to the entry of a final decree in this Case, the

5 Liquidating Trust proposes to distribute all remaining assets, which it estimates may range from

6 approximately $50,000 to approximately $125,000, to the beneficiaries holding the twenty-five (25)

7 largest claims in the Case.  Although the actual amount available for distribution is not yet known, if

8 the average amount within the anticipated range was distributed to all beneficiaries, on a pro rata

9 basis, approximately 73% of all beneficiaries would be entitled to receive less than $10.  Based on

10 the prior experience of the Liquidating Trustee, creditors often do not cash de minimis checks and

11 the administrative costs of making those distributions can outweigh the amount of the distributions,

12 themselves.

13    Under the Trust Agreement, unclaimed distributions are to be held by the Liquidating

14 Trust for a period of one year and then redistributed to the remaining beneficiaries of the Liquidating

15 Trust.  To avoid this problem of circularity and to avoid spending more in costs associated with

16 making a final distribution than the actual amount of that distribution, the Liquidating Trust asks that

17 this Court approve a distribution of the Liquidating Trust's remaining assets to the beneficiaries

18 holding the twenty-five largest claims in the Case.

19    The claims of these twenty-five creditors represent approximately 93% in amount of

20 all allowed unsecured claims.  Distributing the Liquidating Trust's remaining assets to these creditors

21 represents a reasonable and efficient mechanism for liquidating such assets, and avoids the

22 significant expense involved in making a distribution on a greater scale, particularly where the

23 amount at issue is small and relatively few beneficiaries would likely be entitled to a pro rata

24 distribution of more than $10.  Moreover, this mechanism also ensures that the funds of the

25 Liquidating Trust will ultimately benefit its intended beneficiaries and not be escheated to the State

26

27

28

---

[3]    In addition, the Liquidating Trust's disbursing agent is currently holding approximately $93,000 on account of disbursements not yet cashed by the Liquidating Trust's beneficiaries.  If these disbursements are determined to be undeliverable, this cash will revert to the Liquidating Trust before the end of November, pursuant to the terms of the Trust Agreement and this Court's order dated July 31, 2012 [Docket No. 4818].

567723v.3

1  of California.  The Liquidating Trust also seeks to have any final distribution that is not cashed by

2  the intended recipient within three months after the distribution is made to be deemed Unclaimed

3  Funds and transferred to a charity to be designated at or before the hearing on this Motion.

4  **C.      Destruction of Documents.**

5            Prior to the Effective Date, the Debtor filed a motion [Docket No. 286] (the

6  "Destruction Motion") seeking authority to destroy documents and electronic records formerly kept

7  by the Debtor in the course of its business.  Pursuant to an order entered on July 9, 2007, the Court

8  approved the Destruction Motion, in part, and permitted the Debtor to destroy those documents that

9  were not the subject of an objection filed to the Destruction Motion.  The Court reserved for a later

10  date the resolution of the remainder of the relief sought in the Destruction Motion and, in December

11  2007, the Debtor renewed its request to destroy all remaining documents.  The Court held a second

12  hearing on the Destruction Motion on January 22, 2008, and granted the Destruction Motion at the

13  hearing.  Following that hearing, the Debtor and the Liquidating Trust destroyed most, but not all, of

14  the Debtor's records.  Although the Court previously granted this relief, out of an abundance of

15  caution, the Liquidating Trust now seeks authority to destroy any remaining documents and

16  electronic records relating to the Debtor's business or this Case.

17            The Debtor's Case has been pending for six years.  As the Liquidating Trust has fully

18  administered its affairs as set forth in the Plan, no reason exists for the Liquidating Trust to incur the

19  expense of further storing and maintaining documents and electronic records relating to the Debtor's

20  business or this Case.  The Liquidating Trust, therefore, seeks Court authority to take steps necessary

21  to destroy these remaining documents and records.

22  **D.      Dissolution of the Ownit Liquidating Trust.**

23            In light of the fact that the Liquidating Trust has been fully administered as reflected

24  above, the Liquidating Trustee requests that it be formally dissolved pursuant to Court order, and

25  that the Court make a determination that the Liquidating Trustee has no further duties or obligations

26  under the Plan or Trust Agreement.

27            Notwithstanding efforts made by the Liquidating Trustee, the Liquidating Trust

28  anticipates that it may take months before certain state tax and payroll obligations can be finalized.

567723v.3                                                           13

1    In order to fund the processing and payment of these obligations, which will not be finalized until

2    after the Liquidating Trust is dissolved, the Liquidating Trust proposes to reserve certain amounts

3    (totaling approximately $20,000, in the aggregate) on account of such potential liabilities and to

4    allow FTI Consulting to monitor and satisfy any such obligations that become due and owing from

5    those reserves.  Any portion of these reserved funds that are not required to satisfy any such

6    obligations, and which remain more than one year after the entry of the final decree in this Case, will

7    be deemed Unclaimed Funds and transferred to a charity to be designated at or before a hearing on

8    this Motion.  It is expected that any Unclaimed Funds would be relatively de minimis, and it would

9    create yet another problem of circularity if such funds had to be distributed to beneficiaries of the

10   Liquidating Trust.  It is simply not economical to keep the Liquidating Trust or this Case open any

11   longer to monitor and satisfy these limited obligations.

12           Thus, the Liquidating Trust seeks a finding by the Court that the Liquidating Trust

13   has been fully administered and shall have no further liability to any party other than to those

14   professionals who are providing services to the Trust in order to close the case and to file final tax

15   returns.

16   **E.       Discharge of Liability.**

17           All actions by the Liquidating Trustee and his professionals have been undertaken in

18   accordance with the Trust Agreement and the Plan.  Under the Trust Agreement, the Liquidating

19   Trustee and his professionals are indemnified by the Liquidating Trust for all claims that may be

20   asserted against the Liquidating Trustee and his professionals in connection with the performance or

21   exercise of their duties under the Trust Agreement and the Plan.[4]

---

22

23   [4]  Specifically, section 8.2 of the Ownit Liquidating Trust Agreement provides:

24           To the fullest extent permitted by law, the OWNIT Liquidating Trust, to the extent of
             its OWNIT Trust Assets, but not any Beneficiary, shall indemnify, defend and hold
             harmless any Person who was, or is, a party, or is threatened to be made a party, to

25           any pending or contemplated action, suit or proceeding, whether civil, criminal,
             administrative or investigative, by reason of the fact that such Person is or was: (i)

26           the Liquidating Trustee; (ii) an employee of the OWNIT Liquidating Trust; (iii) the
             OWNIT Trust Committee; (iv) a member of the OWNIT Trust Committee; or (v) an

27           employee, contractor, agent, attorney, accountant or other professional for any
             Person described in the preceding clauses (i) through (iv) (collectively, an

28           "Indemnified Person"), from and against any and all losses, costs, damages, expenses

1         To ensure that no claims are asserted against the Liquidating Trustee and his

2  professionals in connection with winding-up the Liquidating Trust in accordance with the Final

3  Report, which is subject to Court approval and for which the Liquidating Trustee and his

4  professionals would be entitled to indemnification under the Trust Agreement, the Liquidating

5  Trustee hereby seeks a discharge of all liability of any and all claims that may be asserted against it

6  and his professionals in connection with the performance of its duties under the Trust Agreement

7  and the Plan.

8         As of the date of this Motion, the Liquidating Trustee is not aware of any claims that

9  have been or may be asserted against it in regard to the performance of such duties.

10         By releasing and discharging the Liquidating Trustee and his professionals from any

11  such liability, the Liquidating Trustee will be able to proceed efficiently and economically to

12  conclude the winding up of the Liquidating Trust.

13  **F.    Final Decree.**

14         As set forth above, the Liquidating Trust's assets have been liquidated and no

15  Adversary Proceedings or contested matters remain pending in the Debtor's case.  All expenses of

16  the Liquidating Trust have been paid (or will be paid) and all payments and distributions to be made

17  to beneficiaries have been made (or will be made) by the Liquidating Trustee in accordance with the

18  provisions of the Trust Agreement, the Plan, and/or Court order.

19         The Liquidating Trust timely submitted interim statements and operating reports to

20  the Office of the United States Trustee (the "UST") covering periods following the Effective Date,

---

22     (including fees and expenses of attorneys and other advisors and any court costs
incurred by an Indemnified Person), judgments, fines and amounts paid in settlement
actually and reasonably incurred by such Person in connection with such action, suit
or proceeding, or the defense or settlement of any claim, issue or matter therein, to
the fullest extent, except to the extent such liability is determined to be the result of
such Person's recklessness, gross negligence, willful misconduct, knowing and
material violation of law, or fraud, and provided that the indemnified parties acted in
good faith and in a manner reasonably believed to be in or not opposed to the best
interests of the Beneficiaries, and with respect to any criminal action or proceeding,
had no reasonable cause to believe its conduct was unlawful, provided, that nothing
in this Agreement shall preclude actions by the Liquidating Trustee or the OWNIT
Trust Committee against any professionals engaged by it as Liquidating Trustee for
professional malpractice. . . .

28  *See* Ownit Liquidating Trust Agreement, § 8.2.

1  and it is current with respect to its payment of quarterly fees to the UST. The Liquidating Trust

2  anticipates that it will confirm and pay the remaining balance of its UST fees upon the closing of this

3  Case.

4        Bankruptcy Code section 350 and Rule 3022 of the Federal Rules of Bankruptcy

5  Procedure provide that a Court "shall" close a case after the estate has been fully administered.

6  Since there are no pending adversary proceedings or contested matters in this Case and the

7  satisfaction and/or treatment of all claims has been completed, entry of a final decree is appropriate

8  at the present time.

9        Neither Bankruptcy Code Section 350 nor Bankruptcy Rule 3022 requires notice or a

10  hearing to close a case. Indeed, the Court may close a case upon its own motion. Nevertheless, the

11  Liquidating Trust has served a copy of this Motion on all parties on the Debtor's post-effective date

12  notice list.

13  **III.**

14  **CONCLUSION**

15       **WHEREFORE**, the Liquidating Trust respectfully requests that the Court enter an

16  order: (i) approving the final report of the Liquidating Trust, (ii) approving the final distribution of

17  funds and dissolving the Liquidating Trust, (iii) approving the destruction of stored documents, (iv)

18  discharging the firm of FTI Consulting and M. Freddie Reiss and its professionals from any and all

19  liability and further duties and obligations for acting as, and on behalf of, the Liquidating Trustee

20  under the Plan and the Trust Agreement, (v) finding that the Liquidating Trust has been fully

21  administered and shall have no further liability to any party other than to those professionals who are

22  providing services to the Trust in order to close the case and to file final tax returns, (vi) entering a

23  final decree in this case, and (vii) granting such other relief as may be just and appropriate.

24  DATED: November 15, 2012      /s/ Gabriel I. Glazer_____

25                      Gabriel I. Glazer
                    STUTMAN, TREISTER & GLATT

26                      PROFESSIONAL CORPORATION
                    Counsel for the Ownit Liquidating Trust

27

28

### DECLARATION OF M. FREDDIE REISS

I, M. Freddie Reiss, hereby declare as follows:

1.      I am over 18 years of age, and I have personal knowledge of each of the facts stated in this declaration, except for those facts stated on information and belief and, as to those facts, I am informed and believe them to be true.  If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge, except where otherwise indicated below.

2.      I submit this Declaration in support of the "Motion for an Order: (I) Approving The Final Report Of The Ownit Liquidating Trust, (II) Dissolving The Ownit Liquidating Trust, (III) Approving The Destruction Of Documents, (IV) Discharging The Ownit Liquidating Trustee And His Professionals From Liability And Any Further Duties Or Obligations; (V) Finding That The Liquidating Trust Has Been Fully Administered And Shall Have No Further Liability To Any Party Other Than To Those Professionals Who Are Providing Services To The Trust In Order To Close The Case And To File Final Tax Returns; And (VI) Entering A Final Decree" (the "Motion").   Pursuant to the Motion, the Liquidating Trust seeks approval of, among other things, its final report, which is attached hereto as Exhibit "1" ("Final Report").

3.      I am the Ownit Liquidating Trustee with respect to the Liquidating Trust, pursuant to the Plan and Trust Agreement.

4.      As set forth on Schedule (vii) to the Final Report, the Liquidating Trust commenced a number of adversary proceedings against various third parties during the Case and, in some cases, such proceedings were commenced against the Liquidating Trust (collectively, the "Adversary Proceedings").  The Liquidating Trust negotiated settlements in each of the Adversary Proceedings that it commenced that resulted in (i) an affirmative recovery for the Liquidating Trust, and/or (ii) a reduction or elimination of claims against the Debtor's estate.  All of the Adversary Proceedings have been closed and no adversary proceeding involving the Liquidating Trust is pending at this time. *See* Final Report, Schedule (vii).

5.      Over $2.3 billion in general unsecured claims were filed against the Debtor's estate. Following the Liquidating Trust's negotiation of various settlements and objections to

1  proofs of claim filed in the Debtor's Case, general unsecured claims were reduced to allowed claims

2  totaling approximately $131 million. In the summer of 2010, the Liquidating Trust made an initial

3  distribution of approximately $22.3 million, resulting in a return to unsecured creditors of

4  approximately 17% (the "Initial Distributions").[5]

5         6.      After the Initial Distributions were made, the Liquidating Trust collected

6  additional amounts from third parties. Among other things, the Liquidating Trust collected

7  additional payments under the Dallas Settlement and, in December 2010, the Court approved a sale

8  of mortgage loans formerly held by the Liquidating Trust which resulted in the Liquidating Trust

9  collecting approximately $1.1 million in sale proceeds (the "2010 Loan Sale").

10        7.      In August 2012, the Liquidating Trust made a second distribution from its

11 remaining assets to its beneficiaries pursuant to the Plan and the Trust Agreement (the "Second

12 Distribution"). The Second Distribution totaled approximately $2.154 million, resulting in an

13 additional recovery of 1.65% to unsecured creditors. In total, the Liquidating Trust distributed more

14 than $29 million to pre-petition creditors of the Debtor, including employees and unsecured

15 creditors, and provided an approximate 18.65% return to unsecured creditors.

16        8.      The Liquidating Trust owned and liquidated a number of mortgage loans

17 following the Effective Date, including those that were the subject of the 2010 Loan Sale (the

18 "Loans"). During the period that the Loans were owned by the Liquidating Trust, they were serviced

19 by a Bank of America entity ("Servicer"), which, among other things, collected payments on the

20 Loans from the underlying borrowers and, where applicable, commenced proceedings to foreclose

21 on delinquent Loans. Following the 2010 Loan Sale, my professionals engaged both the purchaser

22 of the Loans and the Servicer in discussions concerning a final reconciliation of amounts owed in

23 connection with the Loans. I do not believe that these issues will impact the closing of the Case.

24        9.      Now that the Liquidating Trust has been fully administered, I and my

25 professionals are taking actions to wind-up the affairs of the Liquidating Trust, by, among other

26 things, (i) making final payments to the Liquidating Trust's professionals, (ii) preparing and filing

27

28

---

[5]  Approximately $150,000 (0.68%) of this distribution was determined by the Liquidating Trust to be undeliverable, consistent with the terms of the Plan and the Trust Agreement.

1  final tax returns, and (iii) distributing the Liquidating Trust's remaining assets to beneficiaries in an

2  efficient manner.

3       10.    On the Effective Date, cash in the approximate amount of $27.3 million was

4  transferred to the Liquidating Trust.  Following the Effective Date, the Liquidating Trust collected

5  approximately $13.2 million in additional cash assets from multiple third parties, primarily through

6  settlements and sales of mortgage loans.  The Liquidating Trust made distributions to the Debtor's

7  creditors totaling approximately $29.2 million in the aggregate, during the Case.[6]

8       11.    As of October 31, 2012, the Liquidating Trust's remaining assets consist of

9  cash totaling approximately $267,000.[7]  These remaining funds will be used, in part, to make the

10  following payments: (i) fees incurred by the Liquidating Trustee and his professionals, (ii) UST fees,

11  and (iii) reserves to pay certain state taxes.  Prior to the entry of a final decree in this Case, the

12  Liquidating Trust proposes to distribute all remaining assets, which it estimates may range from

13  approximately $50,000 to approximately $125,000, to the beneficiaries holding the twenty-five (25)

14  largest claims in the Case.  Although the actual amount available for distribution is not yet known, if

15  the average amount within the anticipated range was distributed to all beneficiaries, on a pro rata

16  basis, approximately 73% of all beneficiaries would be entitled to receive less than $10.  Based on

17  my prior experience, creditors often do not cash de minimis checks and the administrative costs of

18  making those distributions can outweigh the amount of the distributions, themselves.

19       12.    Under the Trust Agreement, Unclaimed Distributions are to be held by the

20  Liquidating Trust for a period of one year and then redistributed to the remaining beneficiaries of the

21  Liquidating Trust.  To avoid this problem of circularity and to avoid spending more in costs

22  associated with making a final distribution than the actual amount of that distribution, the

23  Liquidating Trust asks that this Court approve a distribution of the Liquidating Trust's remaining

24  assets to the beneficiaries holding the twenty-five largest claims in the Case.

---

25

26  [6]    As of October 30, 2012, approximately $90,000 of this amount had not yet been cashed.

27  [7]    In addition, the Liquidating Trust's disbursing agent is currently holding approximately $93,000 on account of disbursements not yet cashed by the Liquidating Trust's beneficiaries.  If these disbursements are determined to be undeliverable, this cash will revert to the Liquidating Trust by the end of November, pursuant to the terms of the

28  Trust Agreement and this Court's order dated July 31, 2012 [Docket No. 4818].

13.    The claims of these twenty-five creditors represent approximately 93% in amount of all allowed unsecured claims.  Distributing the Liquidating Trust's remaining assets to these creditors represents a reasonable and efficient mechanism for liquidating such assets, and avoids the significant expense involved in making a distribution on a greater scale, particularly where the amount at issue is small and relatively few beneficiaries would likely be entitled to a pro rata distribution of more than $10.  Moreover, this mechanism also ensures that the funds of the Liquidating Trust will ultimately benefit its intended beneficiaries and not be escheated to the State of California.  The Liquidating Trust also seeks to have any final distribution that is not cashed by the intended recipient within three months after the distribution is made to be deemed Unclaimed Funds and transferred to a charity to be designated at or before the hearing on this Motion.

14.    Consistent with prior rulings of the Bankruptcy Court, the Debtor and the Liquidating Trust destroyed most, but not all, documents and electronic records relating to the Debtor's business and this Case.  Out of an abundance of caution, the Liquidating Trust now seeks authority to destroy any such remaining documents and records.  As the Liquidating Trust has fully administered its affairs, no reason exists for the Liquidating Trust to incur the expense of further storing and maintaining documents and electronic records relating to the Debtor's business or this Case.  The Liquidating Trust, therefore, seeks Court authority to take steps necessary to destroy these remaining documents and records.

15.    In light of the fact that the Liquidating Trust has been fully administered as reflected above, I request that the Liquidating Trustee be formally dissolved pursuant to Court order, and that the Court make a determination that the Liquidating Trustee has no further duties or obligations under the Plan or Trust Agreement.

16.    Notwithstanding efforts made by me and my professionals, I anticipate that it may take months before certain state tax and payroll obligations of the Liquidating Trust can be finalized.  In order to fund the processing and payment of these obligations, which will not be finalized until after the Liquidating Trust is dissolved, the Liquidating Trust proposes to reserve certain amounts (totaling approximately $20,000, in the aggregate) on account of such potential liabilities and to allow my firm, FTI Consulting, to monitor and satisfy any such obligations that

1   become due and owing from those reserves.  Any portion of these reserved funds that are not

2   required to satisfy any such obligations, and which remain more than one year after the entry of the

3   final decree in this Case, will be deemed Unclaimed Funds and transferred to a charity to be

4   designated at or before the hearing on this Motion.  It is expected that any Unclaimed Funds would

5   be relatively de minimis, and it would create yet another problem of circularity if such funds had to

6   be distributed to beneficiaries of the Liquidating Trust.  It is simply not economical to keep the

7   Liquidating Trust or this Case open any longer to monitor and satisfy these limited obligations.

8         17.    All actions taken by me, as Liquidating Trustee, and my professionals have

9   been undertaken in accordance with the Trust Agreement and the Plan.  Under the Trust Agreement,

10   I and my professionals are indemnified by the Liquidating Trust for all claims that may be asserted

11   against the Liquidating Trustee and his professionals in connection with the performance or exercise

12   of their duties under the Trust Agreement and the Plan.  To ensure that no claims are asserted against

13   the Liquidating Trustee and his professionals in connection with winding-up the Liquidating Trust in

14   accordance with the Final Report, which is subject to Court approval and for which the Liquidating

15   Trustee and his professionals would be entitled to indemnification under the Trust Agreement, I

16   hereby seek a discharge of all liability of any and all claims that may be asserted against me and my

17   professionals in connection with the performance of my duties under the Trust Agreement and the

18   Plan.  As of the date of this Declaration, I am not aware of any such claims that have been or may be

19   asserted in regard to the performance of such duties.

20         18.    As set forth above, the Liquidating Trust's assets have been liquidated and no

21   Adversary Proceedings or contested matters remain pending in the Debtor's case.  All expenses of

22   the Liquidating Trust have been paid (or will be paid) and all payments and distributions to be made

23   to beneficiaries have been made (or will be made) in accordance with the provisions of the Trust

24   Agreement, the Plan, and/or Court order.  The Liquidating Trust, therefore, seeks a finding by the

25   Court that the Liquidating Trust has been fully administered and shall have no further liability to any

26   party other than to those professionals who are providing services to the Trust in order to close the

27   case and to file final tax returns.

28

19.     The Liquidating Trust timely submitted interim statements and operating

reports to the Office of the United States Trustee (the "UST") covering periods following the

Effective Date, and it is current with respect to its payment of quarterly fees to the UST.  The

Liquidating Trust anticipates that it will confirm and pay the remaining balance of its UST fees upon

the closing of this Case.

I declare under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct.

EXECUTED this 14th day of November 2012, at Los Angeles, California.

_____
M. FREDDIE REISS